**WOODWARD TOWNSHIP, a municipal corporation of Clinton County, Pennsylvania, Appellant**

**v.**

**Lisa A. ZERBE, Amy Bechdel, David R. Zerbe and Chester A. Zerbe, Administrator of the Estate of William G. Zerbe.**

Commonwealth Court of Pennsylvania.

Argued March 17, 2010.

Decided Oct. 20, 2010.

Robert D. O'Connor, Jr., Lock Haven, for appellant.

Marc S. Drier, Jersey Shore, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SIMPSON, Judge, LEAVITT, Judge, BROBSON, Judge, McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Woodward Township appeals an order of the Court of Common Pleas of Clinton County (trial court) that denied the Township's request for a mandatory injunction directing Lisa Zerbe, Amy Bechdel, David Zerbe, and Chester Zerbe (collectively, the Zerbes) to remove the walls enclosing the second floor of their recreational pavilion located along the West Branch of the Susquehanna River. Concluding that the trial court did not abuse its discretion in refusing to grant the Township this injunction, we affirm.

In connection with a flood control levee project along the West Branch of the Susquehanna River, the City of Lock Haven, the Township and the Lock Haven Area Flood Control Authority entered into an inter-governmental cooperation agreement on July 20, 1988. That agreement provided, *inter alia*, that the City and Township would regulate land use in the flood plain to limit uses to those compatible with the flood control project, a joint initiative of the Authority and the United States Army Corps of Engineers. The Zerbe property is located within the area of the flood control project and is subject to a 1993 flowage easement granted by the Zerbes to the Authority. The deed of easement, *inter alia*, requires written approval of the Authority and the Army Corps for any construction on the Zerbe property.

On August 18, 1998, the Authority authorized Chester Zerbe to construct "an open, elevated *pavilion* on an existing concrete pad within the flowage easement area of Woodward Township." Township's Exhibit 6 (emphasis in original). The Army Corps also approved Zerbe's proposed construction of a pavilion. Thereafter, on April 21, 1999, Chester Zerbe filed a building permit application with the Township to construct a "raised pavilion built on [a] concrete pad." Township's Exhibit 5. Specifically, the application described the proposed pavilion as "similar to Larry Lytle's," referring to a pavilion located on a neighbor's property. *Id.* The Lytle pavilion is open on the first level and fully enclosed on the second level.

In 2000, Chester Zerbe retained Cedar Run Environmental Services to prepare an application to the Pennsylvania Department of Environmental Protection (DEP) for a water obstruction and encroachment permit for his proposed pavilion. On March 31, 2000, Steven J. Bason, a professional wetland scientist employed by Cedar Run, submitted the application to DEP. On June 14, 2000, DEP issued Chester Zerbe a permit to "construct and maintain a raised pavilion with open sides" on the property. Township's Exhibit 9, at

1.[1]

On August 1, 2001, Jeffrey Yarnell, the Township's Zoning Officer, visited the Zerbe property for the first time, by which time the pavilion was nearly complete. The pavilion was open on the ground level, and the second floor level was enclosed with exterior siding and openings for windows. Yarnell advised the Zerbes that the Township had never acted on their 1999 building permit application, and the permit was still needed. Because the Zerbes had obtained the necessary approvals from the Authority, Army Corps and DEP, the Township issued a building permit to Chester Zerbe the next day, August 2, 2001, which authorized the construction of a "raised pavilion." Township's Exhibit 10.

By deed dated November 5, 2001, Chester and Olive Zerbe transferred title to the property to their children, Lisa Zerbe, David Zerbe and Amy Bechdel.

In late spring 2002, James Yoxtheimer, the Executive Director of the Authority, inspected the Zerbe property. He notified Yarnell that the now completed pavilion did not conform to the requirements of the Authority and the Army Corps. In turn, Yarnell advised the Zerbes to bring the structure into compliance. Lisa Zerbe wrote a letter to Yoxtheimer on August 20, 2002, requesting the Authority either to approve the pavilion or to advise the Zerbes on how to modify it to be "flood-proof." Zerbe explained that her father had received approval from the Army Corps in 1998 to build a "raised pavilion," and that her family was not aware of the prohibition on second floor walls when they built their pavilion. Township's Exhibit 13.

On August 4, 2003, Yarnell issued a notice of violation to the Zerbes, alleging a violation of the Code of Ordinances of the Township of Woodward (Ordinance) for constructing the pavilion in a manner that did not comply with the building permit, the DEP permit and the regulations of the Authority and the Army Corps. The notice of violation stated that failure to comply could be sanctioned by a criminal conviction and fine. The notice also stated that the Zerbes could appeal to the Zoning Hearing Board, and they did so.

Following a hearing, the Zoning Hearing Board upheld the Township's notice of violation of Section 208(3) of the Ordinance.[2] The Board denied the Zerbes' request for a variance, but it did not specifically impose criminal penalties or sanctions.

The Zerbes appealed to the trial court, and the Township intervened. The trial court affirmed the decision of the Zoning Hearing Board, and the Zerbes appealed to this Court. By unpublished decision and order filed September 28, 2004, this Court reversed the trial court's order. *Zerbe v. Woodward Township Zoning Hearing Board*, 859 A.2d 896 (Pa.Cmwlth., No. 207 C.D.2004, filed September 28, 2004). We concluded that the Zoning Hearing Board lacked jurisdiction because the notice of violation sought to impose criminal sanctions, including imprisonment, which were beyond the ability of a zoning hearing board to grant. The Ordinance did not establish civil sanctions for any violations of its terms.

On October 7, 2004, Yarnell issued a second notice of violation against the

1. In a March 20, 2000, letter to the Township, Bason described Zerbe's proposed structure as a "28′ × 36′ open-sided raised pavilion within the 100–year floodway of the West

Branch of the Susquehanna River." Township's Exhibit 7.

2. The text of Section 208(3) of the Ordinance is set forth below in the opinion.

Zerbes, directing them to remove the walls from the second floor of the pavilion by November 15, 2004. The second notice of violation did not mention criminal sanctions. Instead, it stated that "any person who fails to comply ... shall be subject to an action in equity to enforce compliance...." Township's Exhibit 14, at 2. Similar to the first notice, the second notice provided for a right of appeal to the Zoning Hearing Board. The Zerbes again appealed and challenged the Board's subject matter jurisdiction. The Board agreed with the Zerbes that it lacked jurisdiction, noting that the Ordinance provided only criminal sanctions for any violations thereof.

The Township appealed to the trial court. Because the second notice of violation did not seek to impose any criminal penalties, the trial court remanded the matter to the Zoning Hearing Board to consider the merits. On remand, the Board upheld the notice of violation, reasoning that the Zerbes had constructed a building different from that authorized by their building permit. The Zerbes appealed to the trial court, which dismissed the Zerbes' appeal. The Zerbes appealed to this Court, again challenging the jurisdiction of the Zoning Hearing Board because the only sanctions established in the Ordinance were criminal in nature. This Court held that The Second Class Township Code[3] and the Pennsylvania Municipalities Planning Code (MPC)[4] conferred the Zoning Hearing Board with jurisdiction to consider a zoning violation notice so long as it did not seek to impose criminal sanctions. *Woodward Township v. Woodward Township Zoning Hearing Board*, (Pa.Cmwlth., No. 2588 C.D. 2005, filed October 17, 2006), slip op. at 7–8. This Court affirmed

the Board's conclusion that the Zerbes had violated the Ordinance.

In January 2007, the Township filed a Complaint to Enforce Compliance of Building Permit Violation under authority of Section 617 of the MPC, 53 P.S. § 10617, which states, in pertinent part, as follows:

In case *any building*, structure, landscaping or land is, or is proposed to be, erected, *constructed*, reconstructed, altered, converted, maintained or *used in violation of any ordinance enacted under this act ... the governing body* or, with the approval of the governing body, an officer of the municipality, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, *may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building*, structure, landscaping or land....

53 P.S. § 10617 (emphasis added). The Township requested the trial court to issue a mandatory injunction directing the Zerbes to "comply with the October 7, 2004, Notice of Violation and to remove the vertical walls constructed on [the Zerbes'] pavilion." Township's Complaint. The trial court conducted a hearing on the Township's complaint on January 15, 2009.

At the hearing, counsel for the Zerbes questioned Yarnell about Section 208 of the Ordinance, which the Zerbes were charged with violating. Section 208(3) of the Ordinance states:

In the event the Zoning Officer discovers that the *work does not comply with* the permit application or *any applicable laws* and ordinances, or that there has been a false statement or misrepresentation by any applicant, the Zoning Officer

---

**3.** Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

**4.** Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

shall revoke the building permit and report such fact to the Zoning Hearing Board for whatever action it considers necessary.

CODE OF ORDINANCES OF THE TOWNSHIP OF WOODWARD, § 208(3) (May 15, 1989) (emphasis added). Yarnell conceded that the Township was not alerted to the fact that the "work" on the Zerbes' pavilion did "not comply" with the "applicable laws" until a year after the building permit was issued and the pavilion was completed. This is because the Army Corps changed its policy on the construction of walled structures in the flood plain in 1999, after the Zerbes had received their approval from the Army Corps. Yarnell also acknowledged that Section 208(1) of the Ordinance requires the zoning officer to inspect the premises throughout the construction period to ensure that work is progressing in compliance with the building permit.[5]

Yoxtheimer, the Authority's Executive Director, testified about the procedures for obtaining a building permit in the flood plain area of the Township. He explained that the property owner first submits a building permit application to the Township; then obtains approval from the Authority, the Army Corps and DEP; and finally, returns to the Township for the building permit. Yoxtheimer testified that the Army Corps has become more restrictive in recent years as to what it will permit in the flood plain. Notably, Yoxtheimer testified that "[i]n September of 1999, [the Army Corps] established a policy that [it] would permit no vertical walls to be constructed in the flowage ease-

ment." Reproduced Record at 40 (R.R. ——).

Chester Zerbe testified that in 1998 he sought approval to build "[a] raised pavilion ... [i]t was supposed to be like Dr. Lytle's," i.e., with vertical walls on the second floor. R.R. 32. When pressed about whether he knew the pavilion had to have open sides, Zerbe disagreed that "open" meant "top to bottom," adding that "ours is open" because the 28 windows on the second floor are removable. R.R. 36, 37. Zerbe added that, "I said I was going to build it like Larry Lytle, and that's what we done. His is open just like ours." R.R. 37.

Lisa Zerbe testified that her father had always intended to build a pavilion "[l]ike Dr. Lytle's." R.R. 74. She recalled that when Yarnell visited the property in August 2001, "the walls were there. The windows weren't there yet." R.R. 76. Zerbe testified that Yarnell did not return for an entire year, and that nothing substantial has been done to the property since the summer of 2001. Lisa Zerbe testified that the family was not notified of a problem until a year after the pavilion had been completed. She also discussed her efforts to respond to the Township's notice of violation and to find solutions, such as the installation of louvers in the second floor walls that would allow flood waters to flow through. Zerbe expressed frustration at not being able to ascertain the 200–year flood level for the property and whether that level even reached the second floor of their pavilion.

---

5. Section 208(1) states:

During the construction period, the Zoning Officer, or other authorized official, shall inspect the premises to determine that the work is progressing in compliance with the information provided on the permit application and with all applicable municipal laws and ordinances. He shall make as many inspections during and upon completion of the work as are necessary.

ORDINANCE, § 208(1). Here, the Zoning Officer, Yarnell, made one inspection, on August 1, 2001, after which he issued the building permit.

The Zerbes' expert in engineering and flood plain management, Todd Pysher, confirmed that, based upon the information available from the Authority, there was no way to establish a precise 200–year flood elevation at the Zerbe property. Pysher testified that the Army Corps personnel he consulted were also unable to provide any information on the 200–year flood level. Pysher opined, however, that a 200–year flood plain would be very wide and, therefore, a single structure, such as the Zerbes' pavilion, would have an insignificant impact upon the level of flood waters.

The trial court denied the Township equitable relief. It found that the Zerbe pavilion, as constructed, was consistent with the Township's building permit. However, the Township did not know, at the time it issued the building permit, that the Army Corps had changed its enforcement policy. Specifically, the trial court reasoned:

> It is clear that the Zoning Officer Jeffrey Yarnell did not know that the structure was a violation in August 2001 when he visited the site and simply informed [the Zerbes] of the need for a building permit. Further [the Zerbes] have asserted and this Court accepts as a fact that various other structures in the area, including the one depicted as Defendants' Exhibit "2" (the Lytle property) were nearby their property and [the Zerbes'] construction mirrored the construction that had previously occurred in the area. Finally, James Yoxtheimer testified that it was in 1999 that the Army Corps changed its view of these structures and thereafter, such structures were prohibited. Unfortu-

nately, the Township and its officers were not informed and basically the people on the street enforcing the Ordinance had no knowledge of the change by the Army Corps. It was not until 2002, when James Yoxtheimer of the Authority visited the property, that this became an issue and the course of events which led to this Court began.

Trial Court Opinion, January 20, 2009, at 12. After weighing the equities, the trial court concluded that although the pavilion violated the applicable ordinances and regulations, the Township was not entitled to have the offending structure removed because "the violation [was] not deliberate, the actions of [the Zerbes] were not deliberate or in bad faith and the violation is not substantial." *Id.* The Township's post-trial motions were denied. The Township now appeals the trial court's order denying its request for a mandatory injunction.

On appeal,[6] the Township contends that the trial court erred in refusing it the requested mandatory injunction. First, it contends that the trial court erred by requiring the Township to prove that the Zerbes violated the Ordinance deliberately and substantially. Second, the Township contends that the trial court erred by considering the location of the 200–year flood level on the Zerbes' property, since the Zerbes never sought permission to build a structure above the 200–year flood level.

■ The Township argues, first, that the trial court erred by requiring it to show the Zerbes' violation was "deliberate and substantial" in order to obtain equitable relief. The Township contends that Section 617 of the MPC does not establish a "deliberateness" requirement, and it re-

---

6. This Court's standard of review of a trial court's decision denying a request for equitable relief is limited to considering whether the trial court erred as a matter of law or abused its discretion. *Mellish v. Hurlock Neck Duck Club, Inc.,* 886 A.2d 1151, 1157 n. 11 (Pa. Cmwlth.2005).

quires a "substantial" violation only where the moving party is an "aggrieved owner or tenant of real property." 53 P.S. § 10617. By contrast, where the moving party is a "governing body," it need show only that a violation of its ordinance has occurred.

We disagree with the Township's, and the dissent's, characterization of the trial court opinion. The trial court did not hold that an ordinance violation must be "deliberate and substantial" in order to obtain equitable relief in a Section 617 proceeding. The trial court simply reasoned that the absence of a deliberate and substantial violation hurt the Township's case for a mandatory injunction.[7] This debate is really of no moment, however, because Section 617 does not obligate the court to grant whatever form of equitable relief is requested by a governing body, as the Township suggests. When a governing body invokes Section 617 of the MPC and institutes an "appropriate action or proceeding to ... correct or abate" an offending building or structure, it is instituting a suit in equity, upon which the equitable maxims have bearing, as they do in every request for equitable relief.

■■■ To begin, an injunction is a court order that prohibits or commands virtually any type of action. It is an extraordinary remedy that should be issued with caution and "only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable." *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 (Pa.Cmwlth.2008) (quoting 15 STANDARD PENNSYLVANIA PRACTICE 2D, § 83:2 (2005)). The requirements for permanent injunctive relief are well settled: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested. *Id.* Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *Id.* at 1144–1145 (citing *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977)).

■■■ An injunction that commands the performance of an affirmative act, a mandatory injunction, is the rarest form of injunctive relief and is often described as an "extreme" remedy. *Big Bass Lake*, 950 A.2d at 1145. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. *Id.*

■■ The power to grant or refuse injunctive relief "rests in the sound discretion of the court under the circumstances and the facts of the particular case." *Rick v. Cramp*, 357 Pa. 83, 91, 53 A.2d 84, 88 (1947). "The court which is to exercise the discretion is the trial court and not the appellate court. The action of the court may be reviewed on appeal or error in case of a clear abuse of discretion, but not otherwise." *Id.* at 91, 53 A.2d at 89.

■■ Precedent teaches that the willfulness of an ordinance violation is an important consideration when a court sitting in equity is contemplating whether to order the removal of an offending structure. For example, in *Peters v. Davis*, 426 Pa. 231, 231 A.2d 748 (1967), landowners

---

7. In the words of the trial court, "[w]here deliberate and substantial violations of a zoning ordinance are found, it would be appropriate to order removal of nonconforming structures." Trial Court Opinion, January 20, 2009, at 14 (emphasis added) (citing *Beiler v. Salisbury Township*, 79 Pa.Cmwlth. 213, 468 A.2d 1189 (1983) and *Siegmond v. Duschak*, 714 A.2d 489 (Pa.Cmwlth.1998)).

sought a mandatory injunction directing the defendant to remove portions of his dwelling that violated deed restrictions pertaining to setback requirements. Injunctive relief was granted because the record "portrays vividly defiance and disregard by Davis of both the zoning ordinance and the restrictions." *Id.* at 237, 231 A.2d at 751. *See also Siegmond v. Duschak,* 714 A.2d 489 (Pa.Cmwlth.1998) (order directing removal of offending structure upheld because landowners willfully and deliberately violated zoning ordinance); *Beiler v. Salisbury Township,* 79 Pa.

Cmwlth. 213, 468 A.2d 1189, 1191 (1983) ("Where deliberate and substantial violations of a zoning ordinance are found, it is appropriate to order removal of nonconforming structures.").[8]

In the case *sub judice,* the trial court found that the Zerbes did not intentionally or deliberately violate their building permit, and the record supports that determination. According to the credited testimony of Chester Zerbe and his daughter, the Zerbes have, since 1998, sought to build a pavilion with an enclosed second floor similar to that erected by their neighbor, Lar-

---

8. By contrast, in *Moyerman v. Glanzberg,* 391 Pa. 387, 138 A.2d 681 (1958), the Supreme Court affirmed a trial court's refusal to issue an injunction to require the landowner to tear down a portion of his completed house. The Supreme Court explained that *"[i]n the absence of a wilful and intentional encroachment,* since the inconvenience suffered by appellants is slight in comparison to the extreme hardship which the granting of an injunction would impose upon appellee, the action of the court below in dismissing the injunction request should be affirmed." *Id.* at 394–395, 138 A.2d at 685 (emphasis added). Thus, the absence of willful or intentional conduct by an offending landowner is a sound justification for denying drastic relief in the form of removing part, or all, of a structure. That is exactly the analysis employed by the trial court in the case *sub judice.*

The dissent cites this Court's decision in *Wills v. Middle Smithfield Township,* 117 Pa. Cmwlth. 620, 544 A.2d 103 (1988). In that case, Wills owned a commercially zoned lot measuring 8½ acres. He obtained a building permit to construct an ice cream parlor, erected the building, but never commenced business. Thereafter, Wills conveyed 6½ acres of the land to another individual. The township filed an action in equity to remove the building, which the township argued was in violation of an ordinance requiring retail and commercial establishments to be located on a minimum tract of five acres. The trial court entered a decree ordering Wills to remove the structure within 90 days. In responding to Wills' argument that he had not lied in his permit application, the trial court stated that "a removal order should not be

conditioned upon a showing by the [t]ownship that false statements and misrepresentations were made." *Id.* at 106. On appeal, this Court affirmed. We reiterated that it is the trial court which "has the power to order the abatement of a building which constitutes a zoning violation" in an equity action brought under 617 of the MPC. *Id.*

Reading *Moyerman* and *Wills* together teaches that a municipality does not have to prove that a landowner intentionally or deliberately violated an ordinance, but it is an important consideration when a court is fashioning equitable relief. Thus, the trial court's *consideration* of whether the Zerbes acted willfully did not run afoul of the precedent cited above, especially the Supreme Court's decision in *Moyerman,* which trumps *Wills* in any event.

*Wills* is also factually distinguishable from the present case. Whereas Wills violated his building permit by illegally subdividing his land, the Zerbes relied upon the language in their building permit to construct a "raised pavilion ... similar to Larry Lytle's." Township's Exhibit 5. Arguably, the Zerbes could have invoked the doctrine of vested rights. Pursuant to that doctrine, "where the owner has incurred significant non-recoverable costs in reliance on the permit, the owner's good faith reliance on the permit should afford him a vested right to complete the work, albeit the permit was issued in error." *Petrosky v. Zoning Hearing Board of Township of Upper Chichester, Delaware County,* 485 Pa. 501, 506, 402 A.2d 1385, 1388 (1979) (quoting *Department of Environmental Resources v. Flynn,* 21 Pa.Cmwlth. 264, 344 A.2d 720, 724–725 (1975)).

ry Lytle. The Township building permit was conditioned on the Zerbes obtaining approvals from DEP, the Authority and the Army Corps. When the Zerbes received all of these approvals, they believed that this completed their Township building permit. On August 1, 2001, the Township's Zoning Officer visited the site and observed a nearly complete pavilion with an enclosed second floor. The next day he issued a building permit to Chester Zerbe to construct a "raised pavilion." Township's Exhibit 10.

Unbeknownst to the Zerbes, the Zoning Officer and, apparently, the Authority, the Army Corps had revised its enforcement policy in 1999 to prohibit vertical walls in the flowage easement, even on a second floor. However, it was not until the spring of 2002, long after construction of the permitted pavilion, that the Zerbes learned that the 1998 approvals granted by the Authority and the Army Corps were no longer valid because of the second floor walls.

Neither the Authority nor the Army Corps took action to have the second floor of the Zerbe pavilion removed. Instead, the Township decided to carry their water. It did so by asserting that the Zerbes violated the Ordinance, which the Township construes as incorporating the standards of state and federal agencies.[9] At worst, the Zerbes' conduct was an indirect violation of the Township's zoning regulations; the Zerbes did not violate any of the use or dimensional regulations in the Ordinance. In any event, the Township provided no sanctions in its Ordinance. Had the Township done so, it would not have been necessary for it to resort to equity to enforce its ordinance; however, the grant of equitable relief requires strict adherence to the equitable maxims and deference to the trial court's discretion.

In sum, the trial court applied fundamental equitable maxims by considering whether the Township had a clear right to relief and whether greater injury would result from refusing rather than granting the relief requested. *Big Bass Lake*, 950 A.2d at 1144. The trial court concluded that the harm to the public was not great inasmuch as pavilions just like that of the Zerbes continue to dot islands on the Susquehanna River.[10] By contrast, ordering

9. The Township's construction of the Ordinance is supported only by a vague reference in Section 208(3) to "any applicable laws and ordinances." ORDINANCE, § 208(3). We note that a different provision of the Ordinance references "[a]dditional building permit restrictions [that] apply when the proposed construction or development is located in whole or in part within a designated floodplain area, as defined in Chapter 8 of this Code of Ordinances. These restrictions are found in Chapter 8, Part 4." ORDINANCE, § 204(2). Chapter 8 of the Ordinance is not contained in the record. In any event, the Zerbes were charged only with violating Section 208(3) of the Ordinance.

10. Indeed, this is not a case where the danger created by an offending structure is obvious. For example, in *Pennsylvania Railroad Co. v. Kelley*, 77 N.J.Eq. 129, 75 A. 758,

758 (N.J.Ch.1910), the chancellor granted a mandatory injunction compelling a landowner to immediately remove or repair a building "so structurally defective that it is likely to collapse at any time" onto plaintiff's railroad tracks. *Id.* The appeals court affirmed, noting that "the safety of the traveling public is seriously endangered by the maintenance of the building in its present condition." *Id.* at 760. Other examples of structures that may be subject to removal through a mandatory injunction are dams or jetties that pose a danger to life or property. 42 AM.JUR.2D, Injunctions § 5. We also note this Court's recent decision in *The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Co., Inc.*, 893 A.2d 196 (Pa.Cmwlth.2006). In that case, this Court affirmed the grant of a mandatory preliminary injunction directing a developer to stabilize retaining walls that it had constructed

the Zerbes to effectively tear down their pavilion would create great harm to them. The trial court did not commit a "clear abuse of discretion" by denying the Township's request for a mandatory injunction.[11]

For all of the foregoing reasons, we affirm the order of the trial court.

### ORDER

AND NOW, this 20th day of October, 2010, the order of the Court of Common Pleas of Clinton County in the above-captioned matter is AFFIRMED.

### DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that the trial court did not abuse its discretion when it denied the Township's Complaint to Enforce Compliance of Building Permit Violation wherein the Township requested the trial court to direct the Zerbes to remove the solid walls constructed on the elevated portion of the structure.

Admittedly, this is an unusual controversy. I agree with the majority that Section 617 of the MPC does not obligate the trial court to grant whatever form of relief a municipality requests. However, I disagree with the majority's conclusion that the trial court did not hold that an ordinance violation must be "deliberate and substantial" in order to obtain equitable relief in a Section 617 proceeding. I further believe that the trial court erred when it applied this standard.

Section 617 of the MPC, 53 P.S. § 10617, provides in pertinent part:

In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws, the governing body or, with the approval of the governing body, an officer of the municipality, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation.

First, the Township, the governing body, commenced the Complaint to Enforce Compliance of Building Permit Violation. Therefore, the requirement in Section 617 that the entity bringing the action must be substantially affected does not apply as

---

at a townhouse development. We concluded that mandatory injunctive relief was appropriate because the walls were in imminent danger of collapse and could cause structural damage to the homes and serious bodily injury to their occupants. Some walls had previously collapsed, damaging the homes in the development.

11. In its second issue on appeal, the Township argues that the location of the 200–year flood elevation on the Zerbe property was "irrelevant to the within proceedings" because the Zerbes never applied for a permit to build a structure above that elevation. Township's Brief at 9. What the Township does not explain is how exactly the trial court erred in this regard. The trial court did refer to elevating the pavilion above the 200–year flood level as one possible way to comply with the regulations. *See* Trial Court Opinion, January 20, 2009, at 6, ¶ 21. The trial court was not willing to consider ordering the Zerbes to raise the pavilion because the Army Corps, the Authority and the Township were unable to precisely establish the 200–year flood level. *Id.* at 9. This issue is of no moment, however, since the Township's complaint in equity sought only removal of the vertical walls, which the trial court held was tantamount to removal of the entire structure and which relief it declined to grant.

that requirement only pertains to "an aggrieved owner or tenant of real property."

So, the trial court clearly misapplied Section 617 by holding the Township to the wrong standard: that the Zerbes' violation had to be deliberate and substantial in order to grant the Township relief. The trial court went on to find that the violation was not deliberate, i.e., that the Zerbes did not act deliberately or in bad faith, and that the violation was not substantial.

In *Wills v. Middle Smithfield Township,* 117 Pa.Cmwlth. 620, 544 A.2d 103 (1988), Lawrence A. Wills (Wills) owned property in Middle Smithfield Township (Middle Smithfield). Wills received a building permit from Middle Smithfield to construct an ice cream store. Wills built the building but never operated an ice cream store. He sold six and one-half acres of his original parcel of nearly eight and one-half acres to another party. Middle Smithfield filed an action in equity with the Court of Common Pleas of Monroe County and sought removal of the building on the basis that the building was in violation of the Middle Smithfield Zoning Ordinance which required retail and commercial establishments to be located on a tract of at least five acres. During the litigation Middle Smithfield revoked the building permit. The Court of Common Pleas of Monroe County ultimately ordered that the building be removed. *Wills,* 544 A.2d at 104–105.

One of the issues Wills raised on appeal was whether the revocation of the permit necessitated the removal of the building because he had a valid building permit at the time the building was constructed. *Wills,* 544 A.2d at 105. This Court affirmed:

> In the case at bar, the trial court [Court of Common Pleas of Monroe County] found these distinctions unpersuasive

and determined that *a removal order should not be conditioned upon a showing by the Township that false statements and misrepresentations were made.*

Section 617 of the MPC grants to the governing body of a municipality the authority to institute appropriate action to prevent, restrain, correct or abate any building, structure, or land which is, or is proposed to be, erected, constructed, maintained, or used in violation of any ordinance enacted under the MPC, 53 P.S. § 10617. *Under this section, a trial court has the power to order the abatement of a building* which constitutes a zoning violation.... (Emphasis added).

*Wills,* 544 A.2d at 106 (citation omitted).

According to *Wills,* the trial court erred when it required an intentional and deliberate violation. A review of the conclusions of law of the trial court clearly reveals that it applied a "deliberate and substantial" standard. The trial court made the following conclusions:

2. The actions of Defendants and Defendants' predecessors [Zerbes] in title in this matter were not intentional, deliberate or in bad faith.

3. There has been no showing that this violation of the Township's Ordinance should be considered substantial in any way.

4. Where deliberate and substantial violations of a zoning ordinance are found, it would be appropriate to order removal of nonconforming structures....

5. Defendants and Defendants' predecessors [Zerbes] in title did not act in bad faith.

6. Defendants' [Zerbes] structure as now existing has not been shown to have any impact on any neighboring proper-

ties and/or the Township. (Citations omitted).
Trial Court Opinion, January 20, 2009, Conclusions of Law Nos. 1–5 at 14.

Further, I do not believe that Conclusion Nos. 5 was supported by the record. And, as set forth in Conclusion No. 6, I do not believe it was the Township's burden to prove an adverse impact. An action to enforce a zoning ordinance always includes a showing by the municipality that the use or structure violates the zoning ordinance or that the owner did not receive the necessary permit from the municipality. Robert Ryan, *Pennsylvania Zoning Law and Practice*, § 9.1.10. Once the Township established a violation, it was the Zerbes burden to provide a defense to the violation.

I do agree with the majority regarding the analysis employed when a court determines whether to grant an injunction. Therefore, I would vacate the order of the trial court and remand for a determination whether the Township should be afforded the injunctive relief requested pursuant to the requirements for injunctive relief outlined in the majority's opinion.

Judge BROBSON joins in this dissent.