**Scott T. WYLAND**

**v.**

**WEST SHORE SCHOOL DISTRICT,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Brief June 15, 2012.

Decided Sept. 14, 2012.

---

Catherine Nguyen, Doylestown, for appellant.

Scott T. Wyland, pro se.

Katherine M. Fitz–Patrick, Mechanicsburg, for amicus curiae The Pennsylvania School Boards Assoc.

BEFORE: LEADBETTER, Judge, and SIMPSON, Judge, and COVEY, Judge.

OPINION BY Judge SIMPSON.

Petitioner West Shore School District (District) appeals from the order of the Cumberland County Court of Common Pleas (trial court)[1] mandating busing of Scott T. Wyland's (Wyland) two children from his home in the District to a private school also within the District pursuant to Section 1361 of the Public School Code of 1949 (School Code).[2] The District con-

1. The Honorable Albert J. Masland heard the case.

2. Act of December 29, 1972, P.L. 1726, *amending* Section 1361 of the Public School

tends it has no duty to bus Wyland's children because another school district provides transportation to and from Wyland's ex-wife's residence, which is located in a different school district. We are asked whether the District must provide transportation to Wyland's children when they live with Wyland as "resident pupils" of the District. For the foregoing reasons, we affirm.

## I. Background

Wyland lives in the District and pays school taxes to the District. Wyland has two minor children who attend a private elementary school located in the District. Pursuant to a divorce decree and court order awarding 50/50 custody, Wyland shares joint custody of his children with the children's mother.

When both parents resided in the District at two separate residences, the District provided transportation for the Wyland children to the private elementary school during 2008–2009, 2009–2010 and part of the 2010–2011 school year. The District provided transportation from Wyland's residence approximately two mornings each week.

The children's mother lived in the District until April 2011, when she moved to a residence located in Cumberland Valley School District (CVSD). She advised CVSD that her children needed transportation from her residence to the private elementary school part of the school week. The elementary school notified the District that the children are enrolled in CVSD and CVSD would provide transportation to and from the mother's residence. At that time, the District stopped providing morning transportation from Wyland's residence.

Wyland, an attorney, filed a complaint against the District seeking injunctive relief. Wyland argued that he remains a custodial parent and his children reside in the District under the 50/50 custody arrangement. Thus, under Section 1361 of the School Code, 24 P.S. § 13–1361, the District remained obligated to continue transporting the Wyland children from his home to the private elementary school.

The District contended that CVSD is the district of primary residence; therefore, CVSD has the sole obligation to provide transportation. The District argued that school districts across the Commonwealth do not jointly provide transportation services and that only one school district is required to provide transportation under the School Code. The District asserted that the Pennsylvania Department of Education (P DE) applies a "Single Residency Rule" for both enrollment and transportation purposes when asked questions about residency. The District contended that children cannot have dual residency, meaning residency in two school districts.

The trial court conducted a hearing. Wyland represented himself and served as his sole witness. The District presented two witnesses: Dr. Todd Stoltz, Director of Pupil Services and Transportation in the District, and Stephen Fisher, Advisor to the Deputy Secretary of PDE.

Wyland testified that his status with respect to the District had not changed. Wyland explained that due to the 50/50 custody order, he and his ex-wife share physical custody of the children in a 3/2/2 weekly arrangement. He testified his children generally require transportation from his home to school only two mornings a week due to after-school activities and his work schedule. Wyland confirmed that the District provided transportation to and

Code, Act of March 10, 1949, P.L. 30, *as* *amended,* 24 P.S. § 13–1361.

from the two residences since his children started private school. He acknowledged the schedule occasionally changes depending on the circumstances. Wyland also acknowledged that the District's failure to provide morning transportation to his children has not prevented them from receiving a proper education.

Dr. Stoltz testified regarding the District's policy on transportation. He testified the District provided transportation to the Wyland children during the prior school years because both parents were District residents. He explained the District would not have transported the Wyland children if the parents lived in two separate districts because it would not be consistent with PDE policy. Dr. Stoltz testified PDE provides reimbursement of $385 per nonpublic school student, which is currently paid to CVSD. He stated the District denied transportation to the Wyland children due to lack of reimbursement. Hr'g Tr., 9/6/11, at 62; Certified Record (C.R.) at 141.

Dr. Stoltz acknowledged that PDE's transportation reimbursement form 1049 permitted proration of transportation services for up to one tenth for each student. Significantly, he further acknowledged the District has eight buses with dedicated routes to the private elementary school in question. Hr'g Tr. at 80–81; C.R. at 159–160. Dr. Stoltz conceded that the District suffers no special burden caused by the fact that the Wyland children have two separate residences. Hr'g Tr. at 77; C.R. at 156. He also admitted the District did not suffer additional financial hardships when it transported the Wyland children. The only hardship Dr. Stoltz identified as related to busing the children is the addition of a stop and more time to the bus route.

In his role at PDE, Fisher addresses enrollment and residency issues. Fisher testified about PDE's position on transportation and residency. Fisher explained it is PDE's policy and practice to provide transportation reimbursement to only one school district. He advised that when pupils of separated parents live in two different school districts, PDE designates a district as the district of residence and provides transportation reimbursement to the district in which the child resides. In this case, PDE designated the mother's district, CVSD, as the district of residence, and it is providing transportation reimbursement to that district.

Fisher also testified regarding record-keeping requirements for PDE for enrollment, as distinguished from transportation. He advised the district is responsible to ensure compliance with compulsory attendance and other enrollment issues. With regard to separated parents, Fisher stated that PDE designates one district for reporting and reimbursement purposes. He explained that district reporting obligations for private school students do not include achievement and special education, as the duty to report belongs to the school attended, not the district. Fisher was unaware of any other situations in which children receive transportation services from both districts in which parents having joint custody reside, and he would not recommend it.

The trial court issued a 10–page opinion in which it granted the preliminary injunction, ordering the District to resume transportation of the Wyland children. Pursuant to the injunction, the District resumed transportation in December 2011.

■ The District appealed to this Court.[3] In its Concise Statement of Er-

3. Our standard of review on appeal when a preliminary injunction has been granted is

rors on Appeal pursuant to Pa. R.A.P. No. 1925, the District identified 28 separate errors, including that the trial court failed to apply the higher standard required for mandatory, as opposed to prohibitory, injunctions. In the face of such a non-concise statement, however, the trial court declined to expand upon its original opinion.

On appeal, the District spends much energy challenging the fact-finding and weight-of-evidence decisions it attributes to the trial court. Also, it contends that the lack of busing by the District does not harm the children's education. The District characterizes the alleged harm as no more than inconvenience to Wyland, as he would need to drive the children to school on the two mornings a week when the children reside there.

The Pennsylvania School Boards Association (PSBA) filed a friend-of-the-court brief regarding the impact of the case on school districts across the Commonwealth. PSBA asserts that the injunction undermines the "Single Residency Rule" that PDE applies when residency issues arise. PSBA echoes the District's concerns and cautions against any decision that permits children to receive services from more than one school district.

Wyland argues the trial court properly construed Section 1361 of the School Code to require transportation of his children who live in the District. He emphasizes that the law and facts provide ample support for the trial court's decision. Wyland underscores that the alleged "Single Residency Rule" does not appear in any written guidelines or regulations, and is not

authorized by the School Code. Wyland also asserts the District's appeal should be dismissed because its Concise Statement of Errors on Appeal was not concise.

## II. Discussion

While the facts presented here raise a question of first impression regarding a school district's transportation obligations to students who reside in more than one district *and* attend private school, our answer is informed by cases defining "resident pupil." Before we reach the merits of this dispute, however, we address Wyland's argument that the District's appeal must be dismissed for noncompliance with Pennsylvania Rule of Appellate Procedure 1925.

### A. 1925 Statement: Waiver

■ Wyland asserts the District waived its arguments on appeal because it filed a lengthy Concise Statement of Errors on Appeal. Specifically, Wyland relies upon the number of errors and the trial court's reaction.

Rule 1925, amended in 2007, states in pertinent part:

(4) Requirements; waiver.

(iv) The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

Pa. R.A.P. No. 1925(b)(4)(iv).

The District presented 28 paragraphs of errors in its 1925 Statement. While the

limited to examining the record to determine if there were any apparently reasonable grounds for the action of the court below. *Unionville–Chadds Ford Sch. Dist. v. Rotteveel*, 87 Pa.Cmwlth. 334, 487 A.2d 109 (1985) (granting mandatory preliminary injunction requiring district to transport child attending nonpublic school despite child's ineligibility for enrollment to public school). "Only if it is plain that *no* grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will the decision be interfered with." *Id.* at 111 (emphasis in original).

trial court's reaction was predictable, we conclude that the number of errors is insufficient to constitute waiver here. *See Pennsy Supply, Inc. v. Mumma*, 921 A.2d 1184 (Pa.Super.2007). Wyland does not point to any redundancies and relies on numbers alone. The Rule has been amended to remove a presumption of waiver premised upon the number of errors raised. The District's Concise Statement of Errors on Appeal, while not concise, adequately identifies the issues on appeal. Thus, we hold there is no waiver, and we reach the merits.

**B. Transportation for Resident Pupils**

■ The District challenges the trial court's interpretation of the School Code. We examine the applicable provisions of the School Code and authority cited regarding school district obligations thereunder.

■ Pennsylvania courts construe a duty to provide transportation within the School Code. Section 1361 of the School Code governs transportation of pupils by school districts. It states in pertinent part:

> The board of school directors in any school district may, out of the funds of the district, *provide for the free transportation of any resident pupil* to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway.... *When provision is made by a board of school directors for the transportation of public school pupils to and from such schools ... the board of school directors shall also make identical provision for the free transportation of pupils who regu-larly attend nonpublic kindergarten, elementary and high schools* not operated for profit to and from such schools....

24 P.S. § 13–1361(1) (emphasis added). For purposes of the transportation mandate, the law does not differentiate between public and nonpublic school students, requiring transportation services for both if provided to either. *See Sch. Dist. of Pittsburgh v. Dep't of Educ.*, 33 Pa. Cmwlth. 535, 382 A.2d 772 (1978), *aff'd*, 483 Pa. 539, 397 A.2d 1154 (1979).

Words and phrases in a statute must be construed according to rules of grammar and their plain meaning. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); *Educ. Mgmt. Servs., Inc. v. Dep't of Educ.*, 931 A.2d 820 (Pa. Cmwlth.2007). In *Unionville–Chadds Ford School District v. Rotteveel*, 87 Pa. Cmwlth. 334, 487 A.2d 109 (1985), we followed statutory construction principles and interpreted the term "resident pupil" in Section 1361 as follows:

> Our reading of Section 1361(1) under these principles convinces us that the legislature intended the term, resident pupil, to mean simply *any lawfully enrolled student of a public or nonpublic school described therein who lives in the school district in question.*

*Id.* at 112 (emphasis added).

Like here, in *Unionville–Chadds Ford School District*, this Court required a school district to provide transportation to a student attending private school pursuant to its obligations under Section 1361. The school district argued that it had no obligation to transport the child because he was not yet eligible for free school services under Section 1302 of the School Code, 24 P.S. § 13–1302. We held that his ineligibility for attending or enrolling in public school, and thus ineligibility for free school services, did not affect his eligibility

for transportation services under Section 1361. In so doing, we rejected the school district's argument that a duty to transport is triggered by a duty to provide free school services.

 Pursuant to *Unionville–Chadds Ford School District*, a student need only live in the school district to trigger a district's duty to transport the student. Moreover, the school district's duty to transport a student is not dependent on the ability of the student to "enroll" and receive services from the school district under other provisions of the School Code. Thus, a student's transportation privileges arising under Section 1361 of the School Code are distinct from the education services privileges arising under Section 1302 of the School Code.

The District contends the Wyland children do not qualify as "resident pupils" to whom the statutory duty of transport is owed because they are "enrolled" in CVSD. The District seeks to limit the term "resident pupil" to a single residence consistent with PDE's unwritten "Single Residency Rule." However, the District's narrow construction is at odds with a more recent Supreme Court decision.

In *In re Residence Hearing Before Bd. of Sch. Directors, Cumberland Valley Sch. Dist. (Thane)*, 560 Pa. 366, 370, 744 A.2d 1272, 1274 (2000), our Supreme Court held that "resides" for the purpose of enrollment and education services under Section 1302 of the School Code is "a factual place of abode evidenced by a person's physical presence in a particular place." *Id.* at 371, 744 A.2d at 1275.[4] Importantly, the Court rejected the interpretation of residence that the District puts forth here, that of a single or primary residence. Rather, the

Court held "the term refers to a place where the custodial parent maintains a residence, and, contrary to the board's view, it need not be a primary residence or domicile." *Id.* at 370, 744 A.2d at 1274.

Like the trial court did here, we follow our Supreme Court's construction of the term "resides" to hold that there is "nothing in the School Code which indicates that the terms 'resident' and 'resides' should be given special meanings beyond their classic definitions." *Id.* at 371, 744 A.2d at 1275. We agree with the trial court that it is a mistake to construe the term "residence" more narrowly than its plain meaning to connote "primary residence" or "sole residence."

 Thus, the phrase "resident pupils" in Section 1361 of the School Code means students who reside in a school district, that is, live in a school district. The District acknowledges the parents here have joint and equal custody. As stated in its reply brief, "[t]he District concedes that Mr. Wyland is a resident of the [District] and the Wyland children are residents of the [District] fifty percent (50%) of the time." Appellant's Reply Br. at 3. Thus, the Wyland children reside in two different school districts. The statute does not state "primarily reside." Accordingly, the District's position that the Wyland children are not resident pupils is unsustainable.

**C. The District's Contentions**

Generally, the cases relied upon by the District pertain to enrollment and attendance in public schools, not transportation services for nonpublic school students. The District selects bits and pieces from a number of cases that address attending public school, and the services associated

---

4. The Supreme Court, like the Commonwealth Court before it, adopted parts of the trial court's opinion, including the language quoted here. The trial court opinion was written by Judge J. Wesley Oler, Jr., currently a senior judge on the Commonwealth Court.

with public school attendance. Because, as discussed above, enrollment and transportation mandates are not the same, and do not apply to public and non-public school students the same way, the District's reliance on cases interpreting eligibility of public school students for free school services is misplaced. *See Unionville–Chadds Ford Sch. Dist.*

The District primarily relies upon *North Allegheny School District v. Gregory P.,* 687 A.2d 37 (Pa.Cmwlth.1996), for the proposition that a school district is not obligated to provide transportation to the home of a divorced parent living outside the district. This Court, speaking through Judge Leadbetter, offered as part of its rationale that schools are not required to accommodate parents living separately as a matter of convenience. The District assumes this rationale applies to any educational situation involving separated parents, regardless of the services at issue. For the following legal and factual reasons, this assumption is incorrect.

Regarding legal differences, the source of the legal duty was different in *North Allegheny*. The student in *North Allegheny* needed special education services. Special education services, and a school district's obligation to provide related transportation, are covered by a different provision of the School Code. More particularly, *North Allegheny* concerned transportation as a "related service" to a special education student's individualized education plan, not as a duty under Section 1361, the section of the School Code at issue here. Consequently, unlike the holding in *North Allegheny,* which was guided by state and federal cases regarding special education services, here we do not conduct a cost-benefit analysis to assess the transportation mandate in Section 1361.

As to factual differences, in *North Allegheny* one divorced parent lived in the school district while another lived outside that district. Unlike this case, however, in *North Allegheny* it was the parent living outside the school district that also sought transportation from the district. Here, the requesting parent is a resident of the District and pays taxes to the District. In sum, in *North Allegheny,* we held that a single school district did not need to provide transportation to and from two residences, one of which is outside the district. That is not the situation here.

The District claims that children of separated parents must designate a single school district. In support, it cites *Mathias v. Richland School District,* 140 Pa. Cmwlth. 298, 592 A.2d 811 (1991). Essentially, in *Mathias* we held that a child must attend school in the district in which the custodial parent resides. The District relies upon the following language in *Mathias:*

> We believe that an interpretation of Section 1302 of the Code which would permit a child to be a resident of two school districts is absurd and unreasonable. It has long been the law that a person can have only one domicile or principal residence.... 'It is a general rule that a minor cannot acquire a residence or domicile of his own apart from one of his parents.... Upon the separation or divorce of the parents, a child acquires the domicile of the parent with whom he resides or to whom custody of the child has been given....' It is also a general rule that a minor has the same residence and domicile of the parent with whom he lives.

*Id.* at 812 [citations omitted]. Given the following legal and factual distinctions, however, this language does not govern the current case.

Primarily, the source of the legal duty is different in the two cases. *Mathias* pertained to attending school "tuition free" pursuant to Section 1302, not providing transportation services under Section 1361. The significance of this difference is addressed more fully elsewhere. Factually, in *Mathias*, the parents tried to enroll the child in the district of the non-custodial parent. Thus, the child did not "reside" in the district in which she attempted to enroll. *See In re Residence Hearing.* Moreover, joint and equal custody was not at issue in *Mathias*. Based on these distinctions we fail to discern error in the trial court's reluctance to follow *Mathias* here.

The District also relies upon a 1974 case from the Court of Common Pleas of Washington County, *Lushen v. Peters Township School District*, 65 Pa. D. & C.2d 712 (C.P.Wash.1974). In *Lushen* the trial court observed that a child cannot be a resident of two school districts for purposes of enrollment under Section 1302 of the School Code. Unfortunately, the District's reliance fails to account for significant differences between the cases. As discussed more fully elsewhere, the source of legal duty is different. Factually, in *Lushen*, the child had one residence because custody was awarded to the mother. The question was in which school district the child should enroll. Here, the Wyland children have two factual residences because their parents have 50/50 custody.

We reject the District's contention that if it must transport the Wyland children when they reside in the District, school districts across the Commonwealth will be required to allow students to hold more than one residency for purposes of Section 1302. As discussed above with regard to

our analysis of *Unionville–Chadds Ford School District* case, the transportation duties under Section 1361 of the School Code, at issue here, are distinct from the duties arising under Section 1302 of the School Code, 24 P.S. § 13–1302, pertaining to attendance at public schools and "free school privileges." Additionally, Section 1302 and Section 1361 are not designed to effectuate the same goals. Section 1361 pertains to transportation only, and ensures that if any transportation is provided to students, that it is provided to both public and private school students. The purpose of Section 1302, by contrast, "is to prevent district shopping." *Velazquez v. E. Stroudsburg Area Sch. Dist.*, 949 A.2d 354, 360 (Pa.Cmwlth.2008); *see also Paek v. Pen Argyl Area Sch. Dist.*, 923 A.2d 563 (Pa.Cmwlth.2007).[5]

The District also alleges that Wyland's request violates the "Single Residency Rule." However, the District does not site a single case, statute or regulation setting forth this alleged rule. Indeed, it is conceded that there is no written policy or regulation setting forth the alleged "Single Residency Rule." *See* Pa. Sch. Board's Ass'n *Amicus Curiae* Br. at 9 ("Although PDE has not issued guidelines or adopted a written rule, PDE relies on the Single Residency Rule in responding to residency inquiries.").

■ The District asserts that the "Rule" is really the policy of PDE. We recognize that a court generally should not interfere with a school district's discretion regarding educational policy. *Unionville–Chadds Ford Sch. Dist.* Nonetheless, a school district does not have the discretion to disregard a statutory mandate, as the District has done here.

---

5. The regulation to which the District refers, 22 Pennsylvania Code § 11.11, pertains to attending public schools. 22 Pa.Code § 11.11. Again, the District misapplies authority that governs public school attendance, not transportation for nonpublic school students.

▇ Moreover, regarding the alleged "Single Residency Rule," we note that "an administrative agency is authorized to prescribe rules and regulations only to the extent of carrying into effect the will of the Legislature as expressed in a statute." *Velazquez*, 949 A.2d at 359–60. Section 1361 of the School Code does not restrict a "resident pupil" eligible for transportation to those with only a primary residence in a school district. Therefore, any rule PDE applies that restricts the statute in this way is unauthorized. *Id.*

▇ As to the District's argument that private school students are entitled to no greater transportation right than those who attend public schools, the Supreme Court has held to the contrary. In *Babcock School District v. Potocki*, 502 Pa. 349, 466 A.2d 616 (1983), the Supreme Court reasoned that "while Section 1361 was designed to ensure the adequate transportation of resident pupils attending non-public schools once a district has determined to transport public school children, [citation omitted], that section does not mandate that pupils be transported to public schools outside the school district." *Id.* at 352, 466 A.2d at 617. Accordingly, while private school students are entitled to transportation up to ten miles outside a district, public school students are not entitled to transportation services outside their school district. The transportation mandate as to private and public school students thus differs.

Because the cases upon which the District relies are easily distinguishable, and because we discern no merit in its other contentions, we uphold the trial court's ruling that the Wyland children are "resident pupils" of the District.[6]

## D. Preliminary Injunction Standard

▇ An injunction that commands the performance of an affirmative act, a "mandatory injunction," is the rarest form of injunctive relief and is often described as an extreme remedy. *Woodward Twp. v. Zerbe*, 6 A.3d 651 (Pa.Cmwlth.2010). The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. *Id.* An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim. *Hatfield Twp. v. Lexon Ins. Co.*, 15 A.3d 547 (Pa.Cmwlth.2011).

▇ The elements necessary to establish entitlement to a preliminary injunction are similar: (1) a clear right to relief; (2) immediate and irreparable harm in the absence of an injunction; (3) restoration of the *status quo*; (4) no adequate remedy at law exists and the injunction is appropriate to abate the alleged harm; (5) greater injury will result by not granting than by granting the injunction; and (6) the preliminary injunction will not adversely affect the public interest. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mt., Inc.*, 573 Pa. 637, 828 A.2d 995 (2003). The

---

6. This ruling is consistent with our Supreme Court's recent decision in *Slippery Rock School District v. Pennsylvania Cyber Charter School*, 612 Pa. 486, 31 A.3d 657 (2011), in which it interpreted 22 Pa.Code § 11.11 as pertaining to eligibility to attend public schools. As discussed above, eligibility for transportation services is different from eligibility for public school services. *Unionville–Chadds Ford Sch. Dist.* The regulation does not pertain to eligibility for transportation, which is separate from eligibility to attend public school.

Supreme Court consistently holds that "for a preliminary injunction to issue, *every one* of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." *Cnty. of Allegheny v. Commonwealth*, 518 Pa. 556, 560, 544 A.2d 1305, 1307 (1988) (emphasis in original).

 Upon review, this Court must uphold the trial court's grant of an injunction if it can be sustained upon "any reasonable ground." *Unionville–Chadds Ford Sch. Dist.*

The District criticizes the trial court for failing to apply the higher standard for a mandatory injunction to this case. Had the trial court applied the higher standard, the District argues, then it would have found the requisite elements lacking. We disagree. While the standard is greater for a mandatory injunction, the primary elements of clear right, irreparable harm, retaining the status quo and preventing greater injury are the same and were adequately considered by the trial court here. We review each of these elements in turn.

### 1. Irreparable harm

 Deprivation of a statutory right constitutes irreparable harm. *Pa. Public Utility Comm'n v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947); *Patriot–News Co. v. Empowerment Team of Harrisburg Sch. Dist. Members*, 763 A.2d 539 (Pa.Cmwlth. 2000) (granting injunction to prevent violation of Sunshine Law, 65 Pa.C.S. §§ 701–716). Failure to comply with a statute is sufficiently injurious to constitute irreparable harm. *Id.*

The District refused to provide transportation to the Wyland children despite their status as resident pupils in the District. Because Section 1361 mandates school transportation to resident pupils, and the District is depriving the Wyland children of that right, the harm underlying this injunction is irreparable *per se.* An injunction is suitable to mandate compliance with a statute as in this case. *Patriot–News.*

### 2. Greater Injury

The District contends that a greater injury will result from granting the injunction than denying it based upon the impact on school districts across the Commonwealth. The District maintains that requiring more than one district to provide transportation places a significant administrative and financial burden on school districts for record-keeping and reimbursement. We are not persuaded.

The District did not identify any burden specific to transporting the Wyland children other than the additional stop on an existing bus route, and related additional time. Most district reporting obligations are not implicated as to nonpublic school children. Transportation cost is the only real burden, and since the transport is for two mornings a week, it is nominal. The District did not even quantify the alleged extra burden in transporting the Wyland children.

Similarly, we are unconvinced by the District's floodgate arguments. The District submitted no evidence suggesting that parents routinely seek transportation to private institutions from more than one school district. The record here suggests the opposite, to the extent the District conceded it received no other requests and it is not aware of similar circumstances. C.R. at 144.

Also, the District's contentions that the trial court's decision creates a "dual residency rule" or impairs Section 1302 lack merit. As explained above, a district's obligation to provide transportation is separate from its obligation to provide free school services. *See Unionville–Chadds*

*Ford Sch. Dist.* Further, we discern no negative impact on the public from an injunction mandating compliance with laws designed to serve the public.

### 3. Status quo

■ For purposes of injunctive relief, the status quo is "the last peaceable and lawful uncontested status preceding the underlying controversy between the parties or the alleged wrongful conduct of the parties sought to be enjoined." *Tinicum Twp. v. Delaware Valley Concrete,* 812 A.2d 758, 762 n. 8 (Pa.Cmwlth.2002). In this case, the status which Wyland seeks to restore is the District transporting his children from his residence in the District to the private school for two or so mornings a week. C.R. at 93. Contrary to the District's contention, the status quo is not the status immediately preceding the injunction complaint. Thus, the trial court properly held that an injunction mandating transportation returns the parties to the status quo.

### 4. Clear legal right

As analyzed above, Section 1361 mandates that school districts provide transportation for pupils residing in the district, both to public and private schools, so long as the school district provides transportation to any resident pupils. There is no dispute that the District provides transportation services to both public and nonpublic school students. In fact, the District presently serves eight bus routes to the private school in question. The Wyland children qualify as "resident pupils" of the District. Therefore, Wyland will probably prevail in his claim that he has a clear legal right to transportation for his children from their residence in the District to the private school in the District.

### III. Conclusion

As there are ample grounds for the trial court's decision to grant the injunction and mandate transportation for the Wyland children in accordance with Section 1361 of the School Code, we affirm the trial court.

Judge LEADBETTER dissents.

### *ORDER*

**AND NOW,** this 14th day of September, 2012, the Order of the Cumberland County Court of Common Pleas is **AFFIRMED.**