**Dunbar v. Rivello**

C.P. of Lackawanna County, No. 13 CV 3052

*Michael G. Gallacher*, for plaintiffs.
*Nicholas E. Fick*, for defendant.

NEALON, *J.*, November 4, 2013—In the latest legal dispute between Old Forge developers of residential townhouse units and a neighbor who resides near that development, the developers have presented a petition seeking to enjoin the neighbor from trespassing upon the development property, from having any contact with the developers, their employees, current tenants, and

prospective tenants or purchasers, and from "stalking and/ or photographing" any of those same individuals. Based upon the credible evidence introduced during the three evidentiary hearings, the neighbor will be enjoined from entering the development property, unless such entry is in response to an express invitation by a townhouse tenant. Defendant will also be prohibited from communicating with the developers and their employees, but only to the extent that such contact constitutes terroristic threats, 18 Pa.C.S.A. §2706(a), harassment, 18 Pa.C.S.A. §2709(a), or stalking by communication, 18 Pa.C.S.A. §2709.1(a)(2). Additionally, defendant will be enjoined from "stalking" the developers and their employees, as that term is defined in 18 Pa.C.S.A. §2709.1(a)(1). In all other respects, the petition for injunctive relief will be denied, including the requests to bar defendant "from having any contact" or "speaking to" any current tenants, prospective tenants or prospective purchasers of the townhouse units, and to prohibit defendant from photographing the developers, their employees, existing tenants, and prospective tenants or purchasers.

## I. PROCEDURAL HISTORY

On June 12, 2013, plaintiffs, George Dunbar ("Dunbar") and Lilac Meadows, Inc. ("Lilac Meadows"), filed a complaint against defendant, Joseph Rivello ("Rivello"), charging him with making "false" and "malicious" statements about Lilac Meadows' land development project during Old Forge Borough Council meetings, (Docket entry no. 1 at ¶¶7-11, 14-15, 26), trespassing on Lilac Meadows' property, (*Id.* at ¶¶19-25), harassing and photographing Dunbar's employees working at Lilac Meadows' construction site, (*Id.* at ¶¶13, 16-17), and threatening "the physical and personal safety" of Dunbar.

(*Id.* at ¶18). Dunbar and Lilac Meadows have averred that Rivello "is now seeking to prevent the release to the plaintiffs of almost thirty thousand dollars ($30,000.00) in bond money [by] falsely claiming that the Plaintiffs have violated zoning regulations, construction plans and directives of the Old Forge Borough Council." (*Id.* at ¶27). Dunbar and Lilac Meadows further contend that the "statements and actions by [Rivello] are causing harm and damage to the reputation of plaintiff, George Dunbar, who is a well respected business man in the community," and, therefore, "must be enjoined." (*Id.* at ¶¶28-29).

Dunbar and Lilac Meadows also filed a "Petition for Emergency Injunctive Relief" and secured a Rule to Show Cause which was made returnable for an answer by Rivello on July 5, 2013, with an evidentiary hearing to be held on July 22, 2013. (Docket entry no. 2). Rivello filed an answer and amended answer to the petition for injunctive relief on June 19, 2013, and July 3, 2013. (Docket Entry nos. 5-6). Hearings were conducted on July 22, 2013, August 15, 2013, and September 12, 2013, at which time testimony was received from Dunbar, Eric Vandermark, Officer David Kimble, Officer Jason Dubernas, Rivello and Harold Ash. (Docket entry nos. 9, 11-12). The parties thereafter submitted letter briefs dated September 16, 2013, September 25, 2013, and October 3, 2013. (Docket entry nos. 15-17).

The first twenty-nine paragraphs of the "Petition for Emergency Injunctive Relief" are identical to the twenty-nine averments contained in the complaint. (Docket entry no. 1 at ¶¶1-29; Docket entry no. 2 at ¶¶1-29). The petition also sets forth the criteria for the issuance of an injunction. (Docket entry no. 2 at ¶¶30-34). In their prayer for relief, Dunbar and Lilac Meadows seek to enjoin

Rivello "from entering onto the Plaintiffs' property for any reason," "from having any contact with or speaking to the Plaintiffs, Plaintiffs' employees, and/or Plaintiffs' tenants, prospective tenants, and prospective purchasers," "from stalking and/or photographing the Plaintiffs, Plaintiffs' employees, and/or Plaintiffs' tenants, prospective tenants, and prospective purchasers," and "from speaking to anyone regarding the [Lilac Meadows] development." (Docket entry no. 2 at p.7). At the time of the third evidentiary hearing on September 12, 2013, Dunbar and Lilac Meadows withdrew their request to enjoin Rivello from speaking to anyone concerning the Lilac Meadows development project on Edith Street.

When considering requests for injunctive relief, the trial judge acts as the factfinder and makes credibility determinations in resolving any conflicts in the evidence presented. *See Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1245 (Pa. Super. 2011); *Hunter v. Bowman*, 159 Pa. Cmwlth. 222, 225-226, 633 A.2d 655, 656 (1993). As the factfinder who personally heard the witnesses testify, the trial judge is "in the sole position to observe the demeanor of the witnesses and assess their credibility." *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. 2006), *app. denied*, 591 Pa. 727, 920 A.2d 833 (2007). As a result, the trial judge "may believe all, part or none of the evidence presented." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006), *app. denied*, 599 Pa. 711, 962 A.2d 1197 (2008); *Rizzo v. MSA, Inc.*, 18 Pa. D. & C. 5th 233, 245 (Lacka. Co. 2010), *aff'd*, 32 A.3d 830 (Pa. Super. 2011). The factual findings set forth in Section II below are based upon the evidence which has been deemed to be competent, credible and relevant.

## II. FINDINGS OF FACT

Dunbar is the sole owner and principal of Lilac Meadows, which is engaged in the business of developing and constructing rental properties. In 2010, Dunbar was exploring the possibility of purchasing property on Edith Street in the Borough of Old Forge as a potential site for Lilac Meadows' construction of new townhouse units. Prior to purchasing that land, Dunbar visited the Edith Street property in early September 2010, and reviewed the prepared construction plans at that location. While Dunbar was present at the Edith Street site, a nearby neighbor, Rivello, entered the property and voiced objections to Dunbar regarding his proposed purchase of the Edith Street property and intended construction of townhouse units there. The verbal exchange became heated and culminated with Dunbar demanding that Rivello leave the property.

On September 20, 2010, Dunbar's counsel forwarded a letter to Rivello stating that Rivello had "repeatedly approached [Dunbar] with regard to 'objections' to his proposed project," and had "been aggressive and threatening" to Dunbar. Dunbar's counsel informed Rivello that Dunbar was "purchasing a project which was approved years ago by the [Old Forge] Borough Planning Commission and Borough Council," and that Rivello "had ample opportunity at that time to voice [his] objections or complaints." Dunbar's counsel admonished Rivello to "cease approaching my client in a threatening manner," and stated that "if this conduct does not immediately cease, [Dunbar] will take any and all actions necessary and appropriate under the law to protect himself and his project."

On September 28, 2010, Lilac Meadows purchased the Edith Street land together with the land development plans

which had been approved previously by the Pennsylvania Department of Environmental Protection, the Lower Lackawanna Valley Sanitary Authority, the Old Forge Zoning Board, the Old Forge Planning Commission, and the Old Forge Borough Council. Upon purchasing the Edith Street property, Dunbar posted it with no trespassing signs. Shortly thereafter, Rivello and his sister, Virginia Panko ("Panko"), began appearing at Old Forge Borough Council meetings and making statements critical of Dunbar and the Lilac Meadows project. Rivello also appeared at the Edith Street construction site on a daily basis, photographed Dunbar's construction workers, and heckled them about their work. According to Eric Vandermark, Rivello stalks the construction workers on the project, constantly criticizes their work product, and incessantly accuses them of faulty workmanship and violations of the pre-approved development plans.

On November 11, 2010, the interaction between Dunbar's workers and Rivello became so hostile that the Old Forge Police were summoned to quell a "neighbor dispute." Upon completing his investigation, Office David Kimble informed Rivello that he was "to stay away from Mr. Dunbar's property and his workers," and Rivello "agreed to do so." (Plaintiffs' Exhibit G at p. 3 of 3). However, on March 16, 2011, Rivello again trespassed upon Lilac Meadows' property and was issued a criminal citation by the Old Forge Police Department for defiant trespass. (Plaintiffs' Exhibit I). Once the criminal trespass charge was filed, Rivello's visits to Lilac Meadows' property and his contact with Dunbar and his workers ceased.

During a subsequent hearing in *Com. v. Rivello*, MJ-45101-NT-069-2011 (Lacka. Co.), Magisterial District

Judge James A. Gibbons directed that, in exchange for Rivello's agreement to avoid Dunbar and refrain from trespassing on Lilac Meadows' property, the defiant trespass charge would be dismissed. Rivello admitted under oath, during his discovery deposition in *Lilac Meadows, Inc. v. Rivello*, No. 11 CV 4375 (Lacka. Co.), that Magisterial District Judge Gibbons had specifically instructed him to "stay away from [Dunbar] and his property." Notwithstanding that fact, once the criminal trespass charge was dismissed on May 3, 2011, Rivello's disruptive actions towards Dunbar and his construction workers resumed.

On July 20, 2011, Lilac Meadows filed a defamation suit against Rivello and his sister, Panko, based upon verbal statements that they made about the Lilac Meadows Township project during Old Forge Borough Council meetings. *See Lilac Meadows, Inc. v. Rivello*, 25 Pa. D.& C. 5th 250, 252-257 (Lacka. Co. 2012). After that slander action was instituted, Rivello's public comments concerning Lilac Meadows' project and his daily actions at the construction site once again abated. On April 5, 2012, the undersigned sustained Rivello's demurrer to Lilac Meadows' slander claim on the grounds that Rivello's comments lacked the requisite defamatory character, and that Lilac Meadows had not asserted a commercial disparagement or trade libel claim against Rivello for making false and malicious representations regarding the title or quality of Lilac Meadows' interest in property.[1] *Id.* at 270-274. However, inasmuch as Panko

---

1. Rivello subsequently filed a motion seeking an award of counsel fees under 42 Pa.C.S.A. §2503(9) on the basis that Lilac Meadows' conduct in commencing the slander action "was arbitrary, vexatious or in bad faith," but that motion was denied as untimely and meritless. *See Lilac Meadows, Inc. v. Panko*, 2012 WL 5461380 (Lacka. Co. 2012).

had "suggest[ed] that Lilac Meadows was involved in some form of corruption in conjunction with the land development project," her preliminary objections were overruled. *Id.* at 272, 274.

Following the dismissal of Lilac Meadows' slander claim against Rivello, Rivello's belligerent behavior towards Dunbar and his workers resumed. On June 26, 2012, Rivello was observed on Lilac Meadows' Edith Street property, and the Old Forge Police Department was contacted to investigate another defiant trespass charge against Rivello. (Plaintiffs' Exhibit H). A Lilac Meadows townhouse tenant advised Officer Jason Dubernas that Rivello had entered the tenant's driveway and spoken with him, albeit without an invitation from the tenant to enter Lilac Meadows' land. (*Id.* at p. 4 of 4). After speaking with Officer Kimble and Magisterial District Judge Gibbons, Officer Dubernas contacted the Lackawanna County District Attorney's Office and was advised that charges would be filed against Rivello for criminal trespass. (*Id.*).

On July 11, 2012, criminal charges were filed against Rivello and were later bound over for trial following a preliminary hearing on September 18, 2012. *See Com. v. Rivello*, No. CP-35-CR-02159-2012 (Lacka. Co.) At the conclusion of a subsequent non-jury trial on February 27, 2013, Judge Vito P. Geroulo sustained Rivello's demurrer and dismissed the criminal trespass charge. *See Com. v. Rivello*, No. 12 CR 2159, Geroulo, J. (Lacka. Co. Feb. 27, 2013). Additionally, on May 20, 2013, Lilac Meadows' slander suit against Panko was discontinued with prejudice after Panko's liability insurer made a settlement payment to Lilac Meadows.

After the dismissal of Rivello's criminal charge and

Panko's settlement of the defamation action, Rivello's combative and hostile actions toward Dunbar and his workers resumed. Rivello's harassing conduct reportedly included constant pacing along the Edith Street property, glaring at Dunbar and his workers, photographing Dunbar's workers, and making obnoxious comments at them. Once Dunbar and Lilac Meadows commenced this injunction proceeding against Rivello on June 12, 2013, all such statements and actions halted.

In their post-hearing submission, Dunbar and Lilac Meadows maintain that Dunbar and his workers are still required to travel to the Lilac Meadows property "on a regular basis even though the construction is complete," and that Rivello "continues to harass, intimidate and threaten the Plaintiffs and their employees." (Docket entry no. 16 at p. 3). Dunbar and Lilac Meadows contend that "[t]he fact that [Rivello] was not convicted has emboldened him to continue his improper conduct and to push it even further." (*Id.* at p. 4). They submit that they are entitled to their requested injunctive relief since "[t] he First Amendment does not allow a citizen to threaten, harass and intimidate another citizen under the guise of free speech." (*Id.*).

Rivello counters that with the exception of his appearance at an Old Forge Borough Council meeting on May 7, 2013, all other issues raised in support of the petition for injunctive relief "were previously litigated and decided" in Rivello's favor. (Docket entry no. 15 at p. 2). Rivello asserts that Old Forge Borough's engineering consultant, Harold Ash, suggested to Rivello at a Borough Council meeting that he should photograph any water runoff problems that Rivello contended were caused by the Lilac Meadows project. Rivello posits that he merely

"went to a Borough Council meeting on May 7, 2013, to express concerns about a pave cut on Edith Street which sunk and was now directing water runoff towards his property," and "took photographs as directed by Borough Council and a representative of the Borough Engineer. (*Id.* at pp. 1, 3). He argues that Dunbar and Lilac Meadows "are simply attempting to exact financial punishment on Mr. Rivello for asking questions about the project" and "to squash his First Amendment rights to attend a public meeting and voice his concerns." (*Id.* at p. 2). Rivello avers that the requested injunctive relief should be denied since "there is no immediate and irreparable harm to prevent." (Docket entry no. 17 at p. 1).

Dunbar and Lilac Meadows seek to bar Rivello from entering their property "for any reason," to enjoin him from contacting or speaking to Dunbar, his employees, tenants and prospective tenants or purchasers, and to preclude Rivello from stalking or photographing those same individuals. (Docket entry no. 2 at p. 7). Although the parties' post-hearing submissions cite the criteria for the issuance of an injunction under Pennsylvania law, they do not provide any decisional authority addressing the propriety of an injunction enjoining the type of conduct that Dunbar and Lilac Meadows seek to prohibit. The three categories of requested injunctive relief will be addressed in the order in which they were presented.

## III. DISCUSSION

### (A) STANDARD OF REVIEW

The complaint and petition filed by Dunbar and Lilac Meadows seek the issuance of a permanent injunction rather than a temporary injunction. (Docket entry no. 1 at pp. 6-7; Docket entry no. 2 at pp. 7-8). An injunction "is a

court order that prohibits or commands virtually any type of action." *Woodward Township v. Zerbe*, 6 A.3d 651, 658 (Pa. Cmwlth. 2010); *Gates v. Ransom Township*, 2010 WL 4974415, at * 3 (Lacka. Co. 2010). "It is an extraordinary remedy that should be issued with caution." *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008).

The elements necessary to establish entitlement to a preliminary injunction are: (1) immediate and irreparable harm in the absence of an injunction; (2) greater injury will result from refusing an injunction than from granting it; (3) an injunction will restore the parties to the status quo that existed immediately prior to the wrongful conduct; (4) the proponent's right to relief is clear; (5) the injunction is reasonably suited to abate the offending activity; and (6) the preliminary injunction will not adversely affect the public interest. *Wyland v. West Shore School District*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012); *American Homecare Supply Mid-Atlantic, LLC v. Gannon*, 10 Pa. D. & C.5th 362, 375 (Lacka. Co. 2009). To secure permanent injunctive relief, the proponent must establish: (1) a clear right to relief; (2) an urgent necessity to avoid an injury which cannot be compensated in damages; and (3) that greater injury will result from refusing, rather than granting, the injunctive relief request. *Woodward Township, supra; Gates, supra.* Thus, unlike a claim for a preliminary injunction, the party seeking a permanent injunction "need not establish either irreparable harm or immediate relief." *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 607 Pa. 104, 133, 4 A.3d 610, 627 (2010); *Com. v. TAP Pharmaceutical Products, Inc.*, 36 A.3d 1197, 1221 (Pa. Cmwlth. 2011). "Rather, the plaintiff must show that an actual and substantial injury has occurred and/or is

threatened in the future. *WellSpan Health v. Bayliss*, 869 A.2d 990, 995 (Pa. Super. 2005).

To demonstrate that its right to relief is clear, the plaintiff "must show that it is likely to prevail on the merits." *Duquesne Light Company v. Longvue Club*, 63 A.3d 270, 275 (Pa. Super. 2013). "For a right to relief to be clear, it must be more than merely 'viable' or 'plausible.'" *Ambrogi v. Reber*, 932 A.2d 969, 980 (Pa. Super. 2007), *app. denied*, 597 Pa. 725, 952 A.2d 673 (2008). Moreover, "[e]ven where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury." *Woodward Township*, *supra* (citing *Big Bass Lake Community Association*, 950 A.2d at 1144-1145).

(B) DEFENDANT'S ENTRY UPON PLAINTIFFS' PROPERTY

Dunbar and Lilac Meadows first seek to enjoin Rivello "from entering onto the Plaintiffs' property for any reason." (Docket entry no. 2 at p. 7). It is well settled that a court has the authority to permanently enjoin a party from entering or otherwise interfering with the use of another's land. *See Gunther v. Bolus*, 853 A.2d 1014, 1017 (Pa. Super. 2004), *app. denied*, 578 Pa. 709, 853 A.2d 362 (2004); *Phillippi v. Knotter*, 748 A.2d 757, 758 (Pa. Super. 2000), *app. denied*, 563 Pa. 689, 760 A.2d 855 (2000). Such an injunction will issue where the party seeking to enjoin a trespass upon real property has a clear right to the property in question. *Sprankle v. Burns*, 450 Pa. Super. 319, 323, 675 A.2d 1287, 1289 (1996), *app. denied*, 546 Pa. 683, 686 A.2d 1312 (1996); *King v. Rock*, 415 Pa. Super. 605, 608, 610 A.2d 48, 49 (1992). "The fact that a plaintiff has a remedy in a trespass cause of action does

not rule out the availability of injunctive relief." *Big Bass Lake Community Association*, 950 A.2d at 1146 n. 13 (citing *Ochroch v. Kia-Noury*, 345 Pa. Super. 161, 165, 497 A.2d 1354, 1356 (1985)).

There is no dispute that the Edith Street property, where Lilac Meadows' townhouse units are located, is owned by Dunbar or Lilac Meadows. The credible evidence established that although Rivello has temporarily halted his trespass onto that land since this suit was filed on June 12, 2013, he has repeatedly entered that land in the past notwithstanding warnings from Dunbar, the Old Forge Police Department and Dunbar's counsel, and the clear directive from Magisterial District Judge Gibbons. "Our Supreme Court has continually held that equity is available to a landowner who suffers trespasses of a continuing nature," and that a trial court "possesses jurisdiction to enjoin repeated trespasses on land, as well as to enjoin a nuisance." *Jones v. Wagner*, 425 Pa. Super. 102, 111, 624 A.2d 166, 170 (1993), *app. denied*, 536 Pa. 626, 637 A.2d 286 (1993).

Based upon the credible evidence introduced during the hearings, Dunbar and Lilac Meadows are likely to prevail on the merits of a civil trespass claim.[2] However, Dunbar

---

2. One who intentionally enters the property of another without the privilege to do so is chargeable with civil trespass. *Kopka v. Bell Telephone Company of Pennsylvania*, 371 Pa. 444, 450, 91 A.2d 232, 235 (1952); *Haan v. Wells*, 2013 WL 3119996, at * 3 (Lacka. Co. 2013). Pennsylvania has adopted the Restatement (Second) of Torts §158 which imposes liability for trespass if the intruder enters or remains on the land of another without consent. *Rawlings v. Bucks County Water Sewer Authority*, 702 A.2d 583, 586 (Pa. Cmwlth. 1997); *Murphy v. Frie*, 2013 WL 5487072, at * 5 (Lacka. Co. 2013). The fact that Rivello was acquitted of defiant trespass in *Com. v. Rinaldi, supra*, is immaterial as to whether he may be liable for civil trespass. Criminal prosecutions are governed by the "beyond a reasonable doubt" standard, whereas civil cases are subject to the less demanding "preponderance of the evidence"

and Lilac Meadows seek to bar Rivello from entering the Edith Street property "for any reason." It is conceivable that a tenant of Lilac Meadows may invite Rivello into a townhouse unit or onto Lilac Meadows' grounds for social purposes. Section 504-A of the Landlord and Tenant Act of 1951 states that "[t]he tenant also shall have the right to invite to his apartment or dwelling unit, for a reasonable period of time, such social guest, family or visitors as he wishes so long as his obligations as a tenant under this article are observed." 68 P.S. §250.504-A. The appellate courts in Pennsylvania have construed that statutory provision as granting tenants a protected right to invite social guests to their apartments. *See Branish v. NHP Property Management, Inc.*, 694 A.2d 1106, 1107 (Pa. Super. 1997).

Therefore, an injunction barring Rivello from entering the Edith Street property "for any reason" would be overly broad and violative of 68 P.S. §250.504-A. In the absence of a social invitation from a tenant of Lilac Meadows, Rivello has no right to enter any Lilac Meadows property, and he will be permanently enjoined from doing so.

---

burden of proof. *See Suber v. Pennsylvania Commission on Crime and Delinquency*, 885 A.2d 678, 681 (Pa. Cmwlth. 2005), *app. denied*, 586 Pa. 776, 895 A.2d 1264 (2006). Although a criminal conviction based upon the "beyond a reasonable doubt" standard constitutes conclusive proof of a defendant's acts for purposes of civil liability premised upon the same culpable conduct, *see In re Estate of Reinert*, 367 Pa. Super. 147, 153-154, 532 A.2d 832, 835 (1987), *app. denied*, 518 Pa. 626, 541 A.2d 1138 (1988), the resolution of criminal charges in favor of a defendant does not bar a subsequent civil proceeding concerning the same underlying conduct, *Boguslawski v. Department of Education*, 837 A.2d 614, 617 (Pa. Cmwlth. 2003), nor does it "even constitute evidence of innocence in the civil action, upon the rationale that proof must be established beyond a reasonable doubt in the criminal case, while in civil cases, a preponderance of the evidence will suffice." *Smith v. Com., Dept. of Transp., Bureau of Driver Licensing*, 747 A.2d 1247, 1250 (Pa. Cmwlth. 2000) (quoting *Jordan v. Gore*, 288 Pa. Super. 86, 91-92, 431 A.2d 300, 303 (1981)).

Consequently, the request for injunctive relief will be more narrowly tailored to permanently enjoin Rivello from entering Lilac Meadows' property, except pursuant to an express invitation from a Lilac Meadows tenant.

## (C) DEFENDANT'S CONTACT WITH PLAINTIFFS, THEIR EMPLOYEES, TENANTS AND PROSPECTIVE TENANTS AND PURCHASERS

Dunbar and Lilac Meadows next seek to enjoin Rivello "from having any contact with and/or speaking to" them, their employees, tenants, and prospective tenants and purchasers. It is firmly established in this Commonwealth that an injunction "decree should be as definite, clear, and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it; and, when practicable, it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ." *Apple Storage Co. v. Consumer's Education and Protective Association*, 441 Pa. 309, 315, 272 A.2d 496, 499 (1971) (quoting *Collins v. Wayne Ironworks*, 227 Pa. 326, 330, 76 A.24, 25 (1910)); *George F. Mayer & Son v. Com., Department of Environmental Resources*, 18 Pa. Cmwlth. 85, 88, 334 A.2d 313, 315 (1975) (same). The scope of the requested injunction, which seeks to bar "any contact" with identified and unidentified individuals, is problematic in that regard.

There may be instances where an order is sufficiently definite, clear and precise in proscribing contact with a particular person or group of individuals. For example, the Protection from Abuse ("PFA") Act, 23 Pa.C.S. §§6101-6122, provides for the issuance of orders prohibiting an abusive defendant's "contact" with a victim who is

a person "related by affinity." *See, e.g., Com. v. Walsh*, 36 A.3d 613, 619 (Pa. Super. 2012). Similarly, a former employee who executed a non-competition agreement may be banned from contacting certain customers or clients of an ex-employer for a finite period of time. *See, e.g., American Homecare Supply*, 10 Pa. D.& C. 5th at 389-392. Additionally, protesters who engage in "threatening, intimidating or harassing" conduct towards specific parties may be subject to a content-neutral prohibition against such unlawful activity. *See, e.g., SmithKline Beecham Corp. v. Stop Huntingdon Animal Cruelty, USA*, 959 A.2d 352, 356-357 (Pa. Super. 2008).

Absent a statutory or contractual basis for banning any contact or communication with a specific person, an injunction prohibiting an individual "from having any contact with" or ever "speaking to" certain people, which presumably includes communication in a lawful manner, is too vague and impermissibly broad, and as worded, fails to properly advise that person of the specific "acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ." *See Apple Storage Co., supra*. There may be occasions in which Rivello unexpectedly encounters Dunbar or one of his employees in a public setting, and in the process, makes a statement that is not threatening, harassing or defamatory. So long as Rivello is not present on Dunbar's property as an uninvited guest at that time, a blanket prohibition against such lawful "contact" would overly burden Rivello's First Amendment free speech rights. *See SmithKline v. Beecham Corp.*, 959 A.2d at 359 (injunction prohibiting all protesting at pharmaceutical corporation's facilities impermissibly burdened animal rights protesters' free speech rights since "an outright ban

is overbroad.""). *Compare Sansom House Enterprises v. Waiters & Waitresses Union, Local 301*, 382 Pa. 476, 480, 115 A.2d 746, 748 (1955) ("There is no question but that, where picketing is for an unlawful purpose, it is no longer protected as an exercise of the right of free speech and may property be enjoined.").

Rivello may be enjoined from "communicating" with Dunbar and his employees to the extent that such communication constitutes terroristic threats, harassment or stalking under the Crimes Code.[3] While courts generally will not enjoin the commission of a crime for the sole purpose of enforcing the criminal law, *see Everett v. Harron*, 380 Pa. 123, 129, 110 A.2d 383, 386 (1955), an injunction may be issued if the plaintiff "has shown that the wrongdoer's acts, in addition to violating the criminal law, are also interfering with that individual plaintiffs property rights, [citation omitted], or with that individual plaintiff's personal or civil rights." *Pennsylvania Society for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 428 Pa. 350, 359, 237 A.2d 342, 347-348 (1968). Thus, inasmuch as the credible evidence indicates that Rivello has intentionally and repeatedly harassed, annoyed, alarmed and seriously inconvenienced

---

3. Section 2706(a) defines the offense of terroristic threats as "communicat[ing], either directly or indirectly, a threat to...commit any crime of violence with intent to terrorize another" or "otherwise cause serious public inconvenience...with reckless disregard of the risk of causing such...inconvenience." 18 Pa.C.S.A. §2706(a)(1), (3). A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person communicates "lewd, lascivious, threatening or obscene words," or repeatedly "in an anonymous manner" or "at extremely inconvenient hours." 18 Pa.C.S.A. §2709(a) (4)-(6). Under Section 2709.1(a) of the Crimes Code, stalking includes "repeatedly communicat[ing] to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial distress to such other person." 18 Pa.C.S.A. §2709.1(a)(2).

Dunbar and his workers, Rivello will be restrained from engaging in any contact or communication with Dunbar and his employees which constitutes terroristic threats, harassment or stalking under 18 Pa.C.S.A. §§2706(a), 2709(a) or 2709.1(a), since such unlawful conduct also interferes with their individual rights

However, Lilac Meadows' tenants have the statutory right to communicate and socialize with Rivello and to invite him to their townhouses, *see* 68 P.S. §250.504-A, and they are entitled to decide whether they wish to have contact with Rivello. Although the record contains credible proof that Rivello has arguably harassed or intimidated Dunbar's employees, it is devoid of any evidence that Rivello has acted similarly towards any Lilac Meadows tenants or purchasers. Furthermore, a "contact" prohibition with regard to "prospective" tenants and purchasers is far too ambiguous and lacks the requisite precision for clear enforcement. *See TAP Pharmaceuticals Products*, 36 A.3d at 1232 (stating that an injunction "decree should be as definite, clear and precise in its terms as possible."). Hence, the request to enjoin Rivello from contacting or speaking to the existing tenants and prospective tenants or purchasers will be denied.

(D) DEFENDANT'S STALKING OR PHOTOGRAPHING OF PLAINTIFFS, THEIR EMPLOYEES, TENANTS AND PROSPECTIVE TENANTS AND PURCHASERS

In their final request for injunctive relief, Dunbar and Lilac Meadows seek to enjoin Rivello "from stalking and/or photographing" them, their employees, current tenants, and prospective tenants and purchasers. In addition to stalking by communication, as discussed in Section III(C) above, a

person commits the crime of stalking when [s]he "engages in a course of conduct or repeatedly commits acts towards another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such person." 18 Pa.C.S.A. §2709.1(a)(1). The petitioners presented credible evidence demonstrating that Rivello has repeatedly followed Dunbar and his employees while they were present on Lilac Meadows' property under circumstances which suggest an intent to cause emotional distress to them. Since any such stalking interferes with the personal rights of Dunbar and his employees, Rivello will be enjoined from engaging in conduct toward them which constitutes stalking under 18 Pa.C.S.A. §2709.1(a)(1). *See Pennsylvania Society for Prevention of Cruelty to Animals, supra.* However, in the absence of any proof of comparable conduct towards Lilac Meadows' tenants, there is no evidentiary basis for extending that proscription to the existing tenants or prospective tenants and purchasers of Lilac Meadows.

Dunbar and Lilac Meadows also request a blanket prohibition barring Rivello from photographing them, their employees, existing tenants, and prospective tenants and purchasers in any setting. The Superior Court of Pennsylvania "has held that 'courts of this Commonwealth can enjoin activity which violates an individual's residential privacy.'" *SmithKline Beecham Corp.*, 959 A.2d at 357 (quoting *Klebanoff v. McMonagle*, 380 Pa. Super. 545, 547, 552 A.2d 677, 678 (1988), *app. denied*, 522 Pa. 620, 563 A.2d 888 (1989)). A court may also enjoin a defendant from photographing an individual, provided that such activity creates civil liability on the part

of the defendant for invasion of privacy. *See, e.g., Crozer-Chester Medical Center v. May*, 366 Pa. Super. 265, 269, 531 A.2d 2, 5 (1987) (protesters held in contempt for violating injunction barring them "[f]rom photographing or attempting to photograph any staff member, employee, patient, business invitee or guests" of reproductive health and counseling center "while such person is upon, entering or leaving" that center), *app. dismissed*, 520 Pa. 62, 550 A.2d 196 (1988).

'"It is well established in Pennsylvania that a violation of the right of privacy is an actionable tort.'" *Tagouma v. Investigative Consultant Services, Inc.*, 4 A.3d 170, 174 (Pa. Super. 2010) (quoting *Harris by Harris v. Easton Pub. Co.*, 353 Pa. Super. 141, 152, 483 A.2d 1377, 1383 (1984)). Our tort law in this Commonwealth "recognize[s] a right to privacy that is not constitutionally based." *Moses v. McWilliams*, 379 Pa. Super. 150, 159, 549 A.2d 950, 954 (1988), *app. denied*, 521 Pa. 631, 558 A.2d 532 (1989). Invasion of privacy involves four separate torts, but only the tort of unreasonable intrusion upon the seclusion of another is conceivably applicable in this case. *See Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 765 (Pa. Super. 2009).

Although the Supreme Court of Pennsylvania has not officially adopted Section 652B of the Restatement (Second) of Torts, it has relied upon Section 652B in analyzing the merits of "intrusion upon seclusion" claims. *Tagouma, supra*; *Reinhold v. County of York*, 2012 WL 4104793, at * 18 n. 23 (M.D. Pa. 2012). In addition, the Superior Court has stated "that the Restatement most ably defines the elements of invasion of privacy as that tort has developed in Pennsylvania." *Burger v. Blair Medical Associates, Inc.*, 928 A.2d 246, 250 (Pa. Super. 2007),

*aff'd*, 600 Pa. 194, 964 A.2d 374 (2009). Section 652B of the Restatement is entitled "Intrusion upon Seclusion," and provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Tagouma, supra* (quoting Restatement (Second) of Torts §652B).

To prevail on a claim for "intrusion upon seclusion," a plaintiff must show that (1) there was an intentional intrusion, (2) upon plaintiff's solitude or seclusion, or plaintiff's private affairs or concerns, and (3) the intrusion was substantial and highly offensive. *Reinhold, supra,* at * 18; *Rudder v. Pequea Valley School District*, 790 F. Supp. 2d 377, 404 (E.D. Pa. 2011). Consequently, "there is no liability 'for observing or even taking a photograph while a person is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye.'" *Tagouma*, 4 A.3d at 174 (quoting Restatement (Second) of Torts §652B, Comment c). "Comment c underscores the traditional rule that watching or observing a person in a public place, or taking a photograph of a person who can be observed from a public vantage point, is not generally an invasion of privacy." *Wolfson v. Lewis*, 924 F. Supp. 413, 420 (E.D. Pa. 1996). *Accord, Tagouma*, 4 A.3d at 177-178 (surveillance company hired by workers' compensation carrier to perform videotape surveillance of plaintiff was not liable for invasion of privacy for videotaping plaintiff while worshipping at an Islamic Center, since investigator

was standing at a lawful vantage point in a parking lot across the street and his use of a zoom lens was not unreasonable in light of the fact that the Islamic Center was not completely obstructed from the view of someone in the parking lot).

The only evidence introduced by Dunbar and Lilac Meadows with respect to Rivello's photography revealed that Rivello has photographed Dunbar and his employees only when they were visible from a public roadway as they were standing or working on Lilac Meadows' property. There is no proof that Rivello has photographed Dunbar or his employees in a private place where they had secluded themselves, or while they were attempting to exercise protected civil rights. *Compare Crozier-Chester Medical Center, supra.* Nor did Dunbar and Lilac Meadows present any evidence that Rivello has ever attempted to photograph an existing or prospective tenant or purchaser of Lilac Meadows. Since all photography activity by Rivello involved subjects who were plainly visible from a public vantage point, he has not committed an invasion of privacy.

Therefore, there is no reasonable likelihood that Dunbar or Lilac Meadows would prevail on a claim for invasion of privacy based upon Rivello's photography to date. Dunbar and his employees may be concerned that Rivello may attempt to intrude upon their seclusion by photographing them in the future, but "[i]njunctive relief is not available to eliminate a possible remote future injury or invasion of rights." *Richman v. Mosites,* 704 A.2d 655, 659 (Pa. Super. 1997). As a consequence, their requests to enjoin Rivello from photographing them, their employees, current tenants, and prospective tenants and purchasers will be denied. An appropriate order follows.

## ORDER

And now, this 4th day of November, 2013, upon consideration of the "Petition for Emergency Injunctive Relief" filed by plaintiffs, George Dunbar and Lilac Meadows, Inc., the credible evidence introduce during the hearings, and the legal arguments contained in the parties' post-hearing submissions, and based upon the factual findings and legal conclusions set forth above, it is hereby ordered and decreed that:

1. Plaintiffs' "Petition for Emergency Injunctive Relief" is granted in part and denied in part;

2. Plaintiffs' "Petition for Emergency Injunctive Relief" is granted only to the extent that: (a) defendant is prohibited from entering Lilac Meadows' property on Edith Street in Old Forge, unless such entry is pursuant to an express invitation by a Lilac Meadows' tenant in accordance with 68 P.S. §250.504-A; (b) defendant is barred from communicating with George Dunbar and his employees to the extent that such communication constitutes terroristic threats under 18 Pa.C.S.A. §2706(a), harassment under 18 Pa.C.S.A. §2709(a), or stalking by communication under 18 Pa.C.S.A. §2709.1(a)(2); and (c) defendant is enjoined from "stalking" George Dunbar and his employees, as that term is defined in 18 Pa.C.S.A. §2709.1(a)(1); and

3. In all other respects, plaintiffs' "Petition for Emergency Injunctive Relief" is denied, including their requests to preclude defendant "from having any contact with" or ever "speaking to" any current tenants, prospective tenants or prospective purchasers of Lilac Meadows, Inc., and to bar defendant from photographing George Dunbar, his employees, and any existing tenant, prospective tenant or prospective purchaser of Lilac Meadows, Inc.